UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re                                                  Chapter 7
Lisa A Baiocchi,                                       Case No. 07-26028-svk
      Debtor.

---

Sensient Technologies Corporation
                Plaintiff,
v.                                                     Adv. Proc. No. 07-2287
Lisa A. Baiocchi,
      Defendant.

---

**MEMORANDUM DECISION ON**
**THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

---

      This case explores whether obligations incurred by a debtor under a for-profit company's educational expense reimbursement program are nondischargeable under 11 U.S.C. § 523(a)(8)(A)(ii).

      Lisa Baiocchi (the "Debtor") participated in a program when she was employed by Sensient Technologies Corporation ("Sensient"), a for-profit corporation, under which Sensient reimbursed the Debtor 50% of the cost of tuition and books she incurred attending Marquette University Law School. The record indicates that the Debtor was aware of the conditions of the program, including the requirement that any funds paid to her during the two years prior to her voluntary departure from the company must be repaid to Sensient. The Debtor attended Marquette and worked at Sensient in the payroll department for over two years. During this period, the Debtor submitted requests to Sensient for tuition and book expenses she incurred over the course of each semester. Sensient approved each of the requests and paid the Debtor a total of $26,342.92 through the program.

      The Debtor received her law degree from Marquette in December 2006. Then, on January 18, 2007 she accepted a position as an attorney at another company. The Debtor voluntarily terminated her employment with Sensient on January 29, 2007, within days of receiving her final reimbursement check. Sensient demanded repayment of the $26,342.92 disbursed to the Debtor and eventually sued her when she did not pay.

      The Debtor filed a Chapter 7 petition on August 2, 2007. Sensient initiated an adversary proceeding in this Court on November 6, 2007 seeking to have its debt declared nondischargeable under § 523(a)(8). This decision arises out of cross-motions for summary judgment filed by both parties and a hearing before the Court.

      A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material facts" such that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c), incorporated by Fed. R. Bankr. P. 7056. A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational trier of fact could find in favor of the non-moving party on the evidence presented. *Id.* There are no material facts in dispute in this case. Judgment as a matter of law is therefore appropriate. Sensient bears the burden of proving the debt exists and that the debt is of the type excepted from discharge under § 523(a)(8). *Educ. Credit Mgmt. Corp. v. Savage (In re Savage)*, 311 B.R. 835, 839 (B.A.P. 1st Cir. 2004) (citing *Bloch v. Windham Prof'ls (In re Bloch)*, 257 B.R. 374, 377 (Bankr. D. Mass. 2001)). Once that burden is met, the debt is discharged only if the Debtor proves undue hardship. *Id.* The Debtor here is not claiming undue hardship, and the only issue is whether the Debtor's obligations under the Sensient program fall within the definitions of § 523(a)(8).

Exceptions to discharge are construed narrowly against a creditor and liberally in the debtor's favor. *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972 (7th Cir. 1998). This construction is consistent with the Bankruptcy Code's purpose of giving a debtor a fresh start following bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). A narrow construction allows an "honest but unfortunate debtor" to emerge from bankruptcy with the ability to start over with a clean slate. *Id.* at 287.

Although exceptions to discharge are strictly construed, a court must look to the plain meaning of a statute to determine its scope. *Dekalb County Div. of Family Serv. v. Platter (In re Platter)*, 140 F.3d 676, 681 (7th Cir. 1998). In addition to the particular statutory language at issue, a court should examine the structure and delineation of the text. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988). Where the plain meaning of a statute is not ambiguous, and the application of the plain meaning does not lead to an "absurd result," a court is bound by that interpretation. *Clark v. Chicago Mun. Credit Union (In re Clark)*, 119 F.3d 540, 546 (7th Cir. 1997).

Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), § 523(a)(8) of the Bankruptcy Code read as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

BAPCPA made the following changes, with additions in italics:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt …

2

> (8) *unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--*
>
> *(A)(i)* for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution, *or*
>
> *(ii)* for an obligation to repay funds received as an educational benefit, scholarship or stipend; *or*
>
> *(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual*.

This case is governed by BAPCPA, and neither the Court's nor the parties' research located a case discussing whether a for-profit employer's educational expense reimbursement plan is encompassed by the terms of the revised statute. The Debtor suggests that only *loans* are excepted from discharge based on the Seventh Circuit's pre-BAPCPA decision in *In re Chambers*. *See Manning v. Chambers (In re Chambers)*, 348 F.3d 650 (7th Cir. 2003). *Chambers* involved a graduate student's failure to pay her tuition and related fees to the University of Chicago. Although noting that the student loan discharge exception has been consistently expanded to cover an ever increasing array of educational debts, the Seventh Circuit Court of Appeals nevertheless declined to find that the unpaid balance on a student account constitutes an educational loan under § 523(a)(8). The court noted that no funds changed hands, and no separate agreement existed with the student to provide for later payment. Sensient argues that this case is distinguishable from *Chambers*, in that the Debtor did receive funds from Sensient, and agreed to repay those funds, either in the form of service to Sensient for two years or in cash, if the Debtor voluntarily terminated her employment. This Court agrees that the *Chambers* court likely would find the requisite elements in the Sensient program.

The Debtor also relies on *Joint Apprenticeship Comm. of United Ass'n Local Union No. 307 v. Rezendes (In re Rezendes)*, 324 B.R. 689 (N.D. Ind. 2004). In that case, the debtor entered into an agreement with a trade union to receive training necessary to work in the trade of plumbing and pipe fitting. The agreement provided that the union would educate the debtor, and, if the debtor went to work for an employer who also was a signatory to the agreement, the debtor's work for that employer would effectively pay for his education. If the debtor went to work for a plumber who was not a signatory to the agreement, the debtor was required to pay for his education, and if he worked outside the field of plumbing and pipe fitting, he did not incur liability for the cost of his education. Relying on *Chambers*, the court found that no money changed hands, and there was no obligation to repay arising out of the agreement. The *Rezendes* court also found that the purpose of the agreement could have nothing to do with education, but rather was a "union recruiting and retention plan." *Id.* at 695. In this case, money did indeed change hands, when Sensient reimbursed the Debtor for one-half of her tuition and books. And, as Sensient points out, there was a definite obligation to repay these funds, either by remaining as an employee of Sensient or by repaying the funds in cash.

The fact that Sensient's program serves a purpose beyond the debtor's education does not necessarily mean that the funds received by the Debtor did not constitute an "educational

3

benefit." A similar claim was made in *Burks v. Louisiana (In re Burks)*, 244 F.3d 1245, 1247 (11th Cir. 2001), where the court examined the debtor's obligation to repay loans received for his graduate education, either through serving as an instructor at an "other race" institution or through repayment plus interest. The Eleventh Circuit sided with the "numerous" courts holding that where funds are loaned to students to assist them with their education in exchange for an agreement to fulfill a service obligation or in the alternative to repay the amount received plus interest, the students' obligations are nondischargeable. *Id.* at 1246- 47. This case is more similar to *Burks* than *Chambers* or *Rezendes*. Here, Sensient provided funds to the Debtor to cover educational expenses at Marquette University Law School. The Debtor would not be required to repay the funds if she continued to work for Sensient for two years. However, she knew when she applied for the program that she would be required to repay the money if she left Sensient for another employer within the two year period. Similarly in *Burks*, the creditor advanced funds to pay for the debtor to attend graduate school at Louisiana Tech University, with the understanding that the debtor could either work at an "other race" institution or repay the funds advanced by the creditor. On the other hand, in *Chambers* and *Rezendes*, the creditor itself was providing the educational benefits, rather than "funds" to pay for such benefits, and it was only after the debtors breached their agreements with the creditors that the debtors became obligated to pay the creditors.

Congress' decision to create a new section, set off from § 523(a)(8)(A)(i), also supports Sensient's argument that this debt is nondischargeable. BAPCPA's separation of the phrase "obligation to repay funds received as an educational benefit" from the phrases "loan made, insured or guaranteed by a governmental unit" and "program funded in whole or in part by a nonprofit institution" in § 523(a)(8)(A)(i), must be read as encompassing a broader range of educational benefit obligations, such as those in the instant case.

In short, the plain meaning of the text of § 523(a)(8)(A)(ii) favors Sensient's position. The Debtor agreed to a program under which, if she stopped working at Sensient, she would be obligated to repay the funds she received from Sensient as an educational benefit. She did stop working at Sensient, triggering the repayment requirement. This is a clear example of an "obligation to repay funds received as an educational benefit, scholarship or stipend."

A separate Order granting Sensient's Motion for Summary Judgment and denying the Debtor's Motion for Summary Judgment will be entered.

Date: June 4, 2008

                               By the Court:

                               _____
                               Susan V. Kelley
                               U.S. Bankruptcy Judge